UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSASSINATION ARCHIVES AND RESEARCH CENTER *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, <br><br> Defendant. | Case No. 21-cv-1237 (CRC) |

## MEMORANDUM OPINION

It has been nearly 60 years since President Kennedy's assassination, yet curiosity about the event—and speculation as to who was responsible—persist to this day. The Assassination Archives and Research Center, a non-profit organization dedicated to publicizing materials related to political assassinations, and its President, James Lesar (collectively, "AARC"), believe that the Central Intelligence Agency is keeping secrets about the assassination. In hopes of learning more, AARC filed a Freedom Of Information Act ("FOIA") request with the CIA for records related to two individuals they speculate were associated with the CIA and may have been involved in the assassination, as well as documents related to a formerly classified assessment of the agency's operational effectiveness.

At issue is whether the CIA conducted an adequate search and properly invoked FOIA exemptions to withhold records responsive to AARC's request. Both parties seek summary judgment. For the reasons explained below, the Court will grant summary judgment for the CIA and deny summary judgment for AARC.

I.  **Background**

AARC is committed to publishing materials related to political assassinations and possesses the "largest collection of materials on the assassination of President John F. Kennedy in private hands." Compl. ¶ 4. The organization is led by James Lesar, who "has devoted decades of study" to President Kennedy's assassination. Id. ¶ 5.

In July 2020, AARC submitted a FOIA request to the CIA for documents related to two individuals and one previously classified study of the CIA. Id. Ex. 1 at 1–2. Specifically, AARC sought "all records or information" related to (1) David Harold Byrd, who AARC says owned the Texas School Book Depository Building where the fatal shot was taken; (2) Werner von Alvensleben, Jr., who AARC asserts was a Nazi assassin and "valued double agent" for the United States during World War II, and a friend of David Byrd; and (3) the Doolittle Report, a 1950s report on CIA operations commissioned by President Eisenhower and headed by General James Doolittle. Id.

After the CIA delayed in responding to the request, AARC filed suit. Id. ¶¶ 18-20. The CIA first indicated it did not receive the request, Def.'s Mot. for Extension at 2, ECF No. 9, but ultimately conducted searches and produced responsive documents, Joint Status Report at 1, ECF No. 17. As part of that production, the CIA released seventeen documents in full and invoked FOIA Exemptions 1, 3, and 6 to redact sixteen documents in part and withhold four others completely. Def.'s Statement of Undisputed Material Facts ¶ 2 ("Def.'s SMF"); Def.'s Mot. Summ. J., Ex. 2 ¶ 1 ("Blaine Decl.").[1]

---

[1] The CIA also referred documents to the Federal Bureau of Investigation and the State Department for review; the FBI made redactions to four of the twenty-five pages it was referred, and the State Department made no redactions to the four pages it was referred. Id. ¶¶ 2, 56.

After production was completed, both parties filed a motion for summary judgment, with AARC challenging the adequacy of the CIA's search and its claimed exemptions.

## II.  Standard of Review

Summary judgment may be granted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is the typical mechanism to determine whether an agency has met its FOIA obligations.  See, e.g., Judicial Watch, Inc. v. CFPB, 60 F. Supp. 3d 1, 6 (D.D.C. 2014).

Under FOIA, an agency is first required to make an adequate search for any responsive records.  See Rodriguez v. U.S. Dep't of Def., 236 F. Supp. 3d 26, 34 (D.D.C. 2017).  In reviewing an agency's search, courts apply a "reasonableness" test that looks to the methods and not the fruits of a search.  Id.  To prove its search was reasonable, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency may rely on affidavits that detail "what records were searched, by whom, and through what process" to make this showing.  Steinberg v. DOJ, 23 F.3d 548, 552 (D.C. Cir. 1994).  Agency affidavits are "accorded a presumption of good faith."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

In addition to demonstrating that it conducted an adequate search, the agency must also justify any withholdings it has made pursuant to a FOIA exemption.  See, e.g., Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009).  Justification can be provided by sufficiently detailed agency affidavits.  See, e.g., id.  Because the primary purpose of FOIA is disclosure, exemptions are construed narrowly.  See, e.g., DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015).

### III. Analysis

AARC first contends that the CIA failed to perform an adequate search. It next challenges the CIA's reliance on FOIA Exemption 1, (5 U.S.C. § 552(b)(1)), which shields classified information from disclosure, and Exemption 3, (5 U.S.C. § 552(b)(3)), which protects records that are prohibited from disclosure by statute. AARC also argues that the CIA failed to properly segregate non-exempt material from the withheld records. Finally, AARC raises an assortment of miscellaneous complaints. The Court will consider each objection in turn.

#### A. Adequacy of the Search

The CIA defends the adequacy of its search with a declaration submitted by its Information Review Officer, Vanna Blaine. Ms. Blaine explains that experienced professionals knowledgeable about the agency's record holdings tailored searches in the two records systems where they believed responsive records likely resided: "(1) indices of all hard-copy archived Agency records" and "(2) electronic versions of Agency records that have been previously reviewed and/or compiled for potential public release." Blaine Decl. ¶¶ 13–14. For each system, searches were conducted using key terms, such as "David H Byrd/David Harold Byrd," "Werner von Alvensleben Jr.," "Doolittle Report," "Report on the Covert Activities of the Central Intelligence Agency," and "Study Group." Id. at ¶ 15. Hard-copy files suspected of containing responsive information were searched "line-by-line, page-by-page." Id.

AARC nonetheless claims the search was inadequate because it excluded the agency's operational files and revealed fewer documents than AARC expected. Neither dog will hunt.

##### 1. Search of the CIA's Operational Records

The CIA Information Act generally exempts CIA operational files from the search, review, publication, and disclosure requirements of FOIA. See 50 U.S.C. § 3141(a); Talbot v.

U.S. Dep't of State, 315 F. Supp. 3d 355, 369 (D.D.C. 2018) (Cooper, J.). The Act defines "operational files" to include "files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services." 50 U.S.C. § 3141(b)(1). However, "exempted operational files shall continue to be subject to search and review for information concerning . . . the specific subject matter of an investigation by the congressional intelligence committees," or other specifically enumerated investigative offices, "for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity." Id. § 3141(c). [2] For that exemption-to-the-exemption to apply, three elements must be satisfied: (1) the statute must cover the investigating entity; (2) the information requested must be the "specific subject matter of [the] investigation;" and (3) the investigation must concern "impropriety" or "misconduct" by intelligence agencies. Morley v. CIA, 508 F.3d 1108, 1116–19 (D.C. Cir. 2007).

The CIA did not search its operational files because, in its view, "the requested information does not fall within the scope of any exception that would warrant a search of the CIA's exempted operational files." Blaine Decl. ¶¶ 16–17. AARC responds that the agency should have searched its operational records for information about Byrd and von Alvensleben because the JFK assassination has been thoroughly investigated by the Senate Select Committee on Government Operation with Respect to Intelligence Activities ("Church Committee") and has also been the subject of investigations by the Department of Justice, the Warren Commission,

---

[2] These specific offices are: the Intelligence Oversight Board, the Department of Justice, the Office of the General Counsel of the CIA, the Office of Inspector General of the CIA, and the Office of the Director of National Intelligence. 50 U.S.C. § 3141(c)(3).

and the House Select Committee on Assassinations. Pls.' Mot. Summ. J. at 11-13, 18. But AARC has not offered any evidence that those investigations concerned the specific subjects of its FOIA request.[3]

As the D.C. Circuit explained in another FOIA case seeking records from the CIA about the JFK assassination, a FOIA request concerns "the specific subject matter of an investigation" when "the investigating committee would have deemed the records at issue to be central to its inquiry." Morley, 508 F.3d at 1118; see also Sullivan v. CIA, 992 F.2d 1249, 1255 (1st Cir. 1993) ("[A] pivotal requirement of [50 U.S.C. § 3141(c)(3)] is that, to be extractable, the information requested must concern the specific subject matter of the official investigation."). Thus, "information that merely 'surfaced in the course of the investigation' should not trigger the . . . exception." Morley, 508 F.3d at 1118 (quoting H.R. Rep. No. 98-726, at 31, reprinted in 1984 U.S.C.C.A.N. 3741, 3769).

The fact that President Kennedy's assassination has been investigated by numerous official bodies does not mean that David Byrd or Werner von Alvensleben Jr. were the "specific subject" of any investigation. Nor does AARC provide evidence to support such a conclusion. At most, AARC asserts that the investigations *should have* touched on the fact that "a convicted Nazi assassin was in the company of the owner of the Texas School Book Depository building." Pls.' Mot. Summ. J. at 13. But this begs the question by requiring the Court to believe the speculative theory that AARC hopes to investigate. Speculation is not enough to demand the CIA search its operational files. And even if one of those men did tangentially appear in a

---

[3] Because AARC failed to satisfy the "specific subject matter" requirement, the Court need not determine whether the other requirements for searching the CIA's operational records are met.

relevant investigation, that alone would not justify searching all of the CIA's documents. See Davy v. CIA, 357 F. Supp. 2d 76, 83 (D.D.C. 2004) (quoting Sullivan, 992 F.2d at 1255) (rejecting assertion that the CIA must search its operational files because committees investigating the JFK assassination may have touched on plaintiff's requested subject of information). The CIA's operational files will remain off limits.[4]

### 2. Failure to Locate Expected Records

AARC also contends that "the inadequacy of the CIA's search is evidenced by the absence of records pertaining to known operations, events and activities." Pls.' Mot. Summ. J. at 21. Specifically, AARC posits that "[t]he scale of Byrd's government contracting and the valued nature of von Alvensleben's assistance to U.S. intelligence in World War II support the conclusion that considerable material would be memorialized." Id. at 22. In AARC's view, the search was not "commensurate with the important issues raised in the case" and failed to locate enough responsive records. Id. at 21. These arguments are unpersuasive.

First, the claimed importance of AARC's request has no bearing on the adequacy of the CIA's search. FOIA does not set different standards for searches based on the perceived importance of the requested documents. Indeed, in the Court's experience, most FOIA requesters view their requests with paramount importance. It is well-settled, moreover, that the adequacy of a search "is generally determined not by the fruits of the search, but by the

---

[4] In support of its view that the CIA's operational records must be searched, AARC also notes that Congress passed the President John F. Kennedy Records Collection Act of 1992, 44 U.S.C. § 2107 notes ("JFK Act"), which created a procedure for releasing government records related to the assassination. Pls.' Mot. Summ. J. at 13. But the D.C. Circuit has made clear—in a case involving AARC—that the JFK Act does not alter FOIA's application to documents that may pertain to the assassination of President Kennedy. See Assassination Archives and Research Ctr. v. DOJ, 43 F.3d 1542, 1544 (D.C. Cir. 1995).

appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). Records, especially ones that are nearly six decades old, "may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." Id. Or such records may never have existed at all. Either way, the CIA has detailed the tailored search it conducted to locate responsive records. That is enough. See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (the agency need not "set forth with meticulous documentation the details of an epic search for the requested records"). AARC cannot rely on mere speculation that records likely exist to contest the search's adequacy. See SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.")

B. The CIA's FOIA Withholdings

Next, AARC challenges the CIA's withholding of some responsive information. The CIA asserted its withholdings, some in part and some in full, under three FOIA exemptions: Exemption 1 (for classified information), Exemption 3 (for records exempt from disclosure by statute), and Exemption 6 (for personnel information).[5] AARC challenges the CIA's reliance on Exemptions 1 and 3. While the record leaves some doubt as to whether the CIA properly applied Exemption 1, the Court will grant summary judgment for the CIA because the same information was properly withheld under Exemption 3.

---

[5] According to the declaration of Michael G. Seidel, Chief of the Record/Information Dissemination Section of the FBI's Information Management Division, the FBI invoked Exceptions 6 and 7 (law enforcement records) to withhold some information from documents referred to it by the CIA. Def.'s Mot. Summ. J., Ex. 3 ¶ 4 ("Seidel Decl."). Those withholdings are uncontested.

AARC also maintains that the CIA failed to segregate exempted material and requests the Court conduct an in camera review to double-check the agency's work. AARC has not produced sufficient evidence to merit such relief.

The Court will start with the claimed exemptions before turning to AARC's segregability argument.

1. *Exemption 3*

The CIA withheld several documents in part or in full under Exemption 3, which applies to records exempted from release under FOIA by another statute, see 5 U.S.C. § 552(b)(3). The CIA bases its withholdings on two specific statutes: the National Security Act, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act, 50 U.S.C. § 3507 ("CIA Act"). Def.'s Mot. Summ. J. at 13. The National Security Act broadly directs the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The CIA Act prevents the disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. Both statutes have been recognized as Exemption 3 withholding statutes. See CIA v. Sims, 471 U.S. 159, 168 (1985) (National Security Act); DiBacco v. U.S. Dep't of the Army, 234 F. Supp. 3d 255, 275 (D.D.C. 2017) (CIA Act).

Ms. Blaine attests in her declaration that the CIA invoked the National Security Act to withhold "information that would reveal intelligence sources and methods." Blaine Decl. ¶ 25–26. She elaborates that the intelligence methods at issue are still in use or could be used, and that disclosure of these methods would "undermine U.S. intelligence capabilities and render

collection efforts ineffective." Id. ¶ 20.[6]  Specifically, Ms. Blaine notes that the CIA redacted "locations of specific overseas facilities and classified internal CIA polices," "a comprehensive inspection of intelligence activities, sources, and methods of the Psychological and Paramilitary Operations Staff," and "unclassified intelligence methods . . . such as dissemination controls." Id. ¶¶ 22, 26.  In addition, Ms. Blaine asserts that she relied on the CIA Act to withhold "officers' names and other identifying information as well as functional and organizational information, among other items." Id. ¶ 27.

AARC contests the CIA's use of Exemption 3, arguing that the withholdings were applied to materials that are over 50 years old and, thus, should be automatically declassified. Pls.' Mot. Summ. J. at 25.  According to AARC, Exemption 3 only applies to "unauthorized disclosure[s]" and publishing information that should be automatically declassified cannot be considered unauthorized. Id.  But that argument runs contrary to Supreme Court precedent. Sims, 471 U.S. at 169 ("Congress [did not] state that only confidential or nonpublic intelligence sources are protected.  [The National Security Act] contains no such limiting language."); see also Talbot v. U.S. Dep't of State, 315 F. Supp. 3d 355, 373-74 (D.D.C. 2018) (Cooper, J.) (rejecting the argument that "declassification automatically makes any disclosure authorized" under the National Security Act).[7]

---

[6] The Court cites to some sections of Ms. Blaine's declaration that relate to Exemption 1 to support its ruling on the use of Exemption 3 because the CIA's withholdings under Exemption 3 cover the same materials.  Blaine Decl. ¶ 26

[7] AARC's automatic declassification argument carries more force in response to the CIA's use of Exemption 1 to withhold classified information pursuant to Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("EO").  That executive order requires automatic declassification of materials older than 25 years, but permits continued withholding in some circumstances, including if disclosure would "reveal the identity of a confidential human source, a human intelligence source, . . . or impair the effectiveness of an intelligence method currently

AARC also contests the CIA's reliance on the CIA Act, but fails to specify any particular objection to the CIA's conduct in this case. AARC notes that "the agency has recently asserted the CIA Act in several cases to exclude information regarding the organization and functions of the agency generally," Pls.' Mot. Summ. J. at 27, but the CIA does not appear to be raising that justification here. And while the agency's Vaughn index does include citations to the CIA Act as one of a number of exemptions applied to fully-withheld documents, the Court does not interpret that as meaning the CIA is using the CIA Act to justify withholding the whole document. Def.'s Mot. Summ. J., Ex. 2 at 1. Instead, the Court credits the agency's justifications detailed in Ms. Blaine's declaration, which it presumes were made in good faith. See SafeCard Servs., 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith[.]")

Because AARC has not raised any genuine issues of material fact regarding the withheld information, the Court will grant summary judgment for the agency as to the validity of those exemptions.

---

in use, available for use, or under development." EO § 3.3(b)(1). For documents older than 50 years, like many at issue in this case, continued withholding is permitted in a more limited set of circumstances, including if the materials would reveal "the identity of a confidential human source or a human intelligence source." EO § 3.3(h)(1)(A). The Court harbors some doubt that the CIA's Exemption 1 claim is sufficient, as Ms. Blaine's declaration centers on concerns about impairing intelligence methods, as opposed to intelligence sources, and much of the material appears to be at least 50 years old. Given that the same withholdings are appropriately justified by the CIA's reliance on Exemption 3, however, the Court need not resolve those distinctions. See Def.'s Mot. Summ. J. at 14 ("[T]he CIA asserted Exemption 3 in conjunction with [the National Security Act] to protect all the same information for which Exemption 1 was asserted[.]")

### 2. *Segregability*

AARC also challenges the CIA's compliance with FOIA's requirement to release any "reasonably segregable portion of a record." 5 U.S.C. § 552(b)(9). AARC asserts that it is unreasonable for the CIA to withhold 50-year-old documents in full, and asks the Court to review the withheld documents in camera to determine if the CIA complied with its obligations. Pls.' Mot. Summ. J. at 28–29. The Court will deny this request.

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). Ms. Blaine explained that the CIA conducted a line-by-line review and released all reasonably segregable records. Blaine Decl. ¶ 33. The burden is on AARC to proffer contrary evidence to rebut the applicable presumption, see Sussman, 494 F.3d at 1117, and it has not done so. Nor has it provided evidence to justify in camera review. See Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) ("[T]he government's burden does not mean that all assertions in a government affidavit must routinely be verified by audit."). Accordingly, AARC's segregability challenge fails.

### C. Miscellaneous Challenges

AARC also raises a grab-bag of other issues, which the Court will address briefly.

### 1. *Former President Trump's Files*

AARC requests that the Court order the CIA to search "classified files retrieved from former President Trump" because "President Trump has expressed strong interest in the assassination of President Kennedy and may have had possession of government files on the topic." Pls.' Mot. Summ. J. at 14. But AARC offers nothing but speculation to support that the collection of recovered documents were "likely" to contain responsive documents.

Further, even if AARC had more than speculation to support its request, it is not entitled to additional searches after the date the search was "tasked." An agency may limit its search to documents in its possession as of a certain date, but its decision must be reasonable. McGehee v. CIA, 697 F.2d 1095, 1100–02 (D.C. Cir. 1983). Cut-off dates set for the "date-of-search" have been "implicitly sanctioned" as reasonable. McClanahan v. DOJ, 204 F. Supp. 3d 30, 47 (D.D.C. 2016) (citing Pub. Citizen v. Dep't of State, 276 F.3d 634, 642–43 (D.C. Cir. 2002)). Further, the D.C. Circuit has suggested that whenever an agency determines which components to "task" with the search is a reasonable cut-off date. See Pub. Citizen, 276 F.3d at 643. According to a supplemental declaration from Ms. Blaine, the CIA set a cut-off date for AARC's FOIA request based on when "the search was tasked," which Ms. Blaine avers was "11 June 2021." Def.'s Reply and Opp'n to Pls.' Mot. Summ. J., Ex. 1 ¶ 4 ("Blaine Supp. Decl."). Because any classified files that may have been found in Mr. Trump's possession were identified and recovered after the cut-off date, the CIA need not redo its search.

  2. *Discovery*

Asserting that the CIA has undermined its credibility by initially denying receipt of the request, AARC insists that discovery is necessary to clarify the issue. Pls.' Mot. Summ. J. at 23–24. The Court disagrees. "[D]iscovery is rarely appropriate in FOIA cases." Pavement Coatings Tech. Council v. U.S. Geological Surv., 995 F.3d 1014, 1024 (D.C. Cir. 2021). Given that the CIA subsequently responded to AARC's request, there is no controversy requiring the extraordinary relief of permitting discovery in a FOIA case.

  3. *Documents C01270964 & C01270967*

Lastly, AARC lodges objections concerning two documents that were referred to the FBI for direct response to AARC. Pls.' Mot. Summ. J. at 25. Specifically, it says that the document

13

numbered C01270964 "is largely illegible" and the document numbered C01270967 contains two redactions that the FBI did not explain.  Id.  AARC requests that legible and unredacted versions of these documents "must be located and released." Id.  While the document numbered C01270964 does contain handwritten marks and some unreadable portions, it appears to the Court that it is the version the CIA had in its possession.  To the extent AARC would like the FBI to look for an unblemished version of the document, it must direct a FOIA request to the FBI.  And as to the document numbered C01270967, the redactions described by AARC appear to be preexisting marks, and not exemptions made by either the CIA or FBI in response to this FOIA request.  The Court sees no issues requiring resolution.

## IV.  Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment and deny AARC's Motion for Summary Judgment

A separate Order shall accompany this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  February 22, 2023